UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LORENZO B., | No. 1:18-CV-3186-LRS |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,** *INTER ALIA* |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 14) and the Defendant's Motion For Summary Judgment (ECF No. 15).

**JURISDICTION**

Lorenzo B., Plaintiff, applied for Title XVI Supplemental Security Income benefits (SSI) on April 20, 2015. The application was denied initially and on reconsideration. Plaintiff timely requested a hearing which was held on May 16, 2017 before Administrative Law Judge (ALJ) Glenn Meyers. Plaintiff testified at the hearing, as did Vocational Expert (VE) Kimberly Mullinax. On September 29, 2017, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review. The Commissioner's final decision is appealable to district court pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 1**

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. At the time of the administrative hearing, Plaintiff was 49 years old. He has past relevant work experience as a flagger, material handler and as an industrial truck operator.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in: 1) evaluating the medical opinions of record; 2) not giving full credit to Plaintiff's testimony; 3) ignoring lay testimony; and 4) failing to fulfill his Step Five burden.

## DISCUSSION

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work but cannot, considering his age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if he is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. § 416.920(a)(4)(i). If he is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT- 3**

impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age, education and work experience. 20 C.F.R. § 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found the following: 1) Plaintiff has "severe" medical impairments, those being cervical and lumbar degenerative disc disease, substance abuse in remission, depression, post-traumatic stress disorder (PTSD), anxiety, diabetes

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

mellitus, and hepatitis C; 2) Plaintiff's impairments do not meet or equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1; 3) Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b) with the caveat that he is capable of engaging in unskilled, repetitive, routine tasks in two hour increments; he can have superficial, incidental contact with the public; he is capable of working in proximity to, but not in coordination with, coworkers; he can have occasional contact with supervisors; he would be off task at work up to 10 percent of the time, but would still meet the minimum production requirements of the job; and he would have up to six unscheduled absences from work per year; 4) Plaintiff's RFC does not allow him to perform his past relevant work, but (5) it does allow him to perform other jobs existing in significant numbers in the national economy as identified by the VE, including assembler, production; cleaner, housekeeping; and packing line worker. Accordingly, the ALJ concluded the Plaintiff is not disabled.

**MEDICAL OPINIONS**

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion of a licensed treating or examining physician or psychologist is given special weight because of his/her familiarity with the claimant and his/her condition. If the treating or examining physician's or psychologist's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *Id*. "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). . The opinion of a non-examining medical advisor/expert need

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

not be discounted and may serve as substantial evidence when it is supported by other evidence in the record and consistent with the other evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Nurse practitioners, physicians' assistants, and therapists (physical and mental health) are not "acceptable medical sources" for the purpose of establishing if a claimant has a medically determinable impairment. 20 C.F.R. § 416.913(a). Their opinions are, however, relevant to show the severity of an impairment and how it affects a claimant's ability to work. 20 C.F.R. § 416.913(d). In order to discount the opinion of a non-acceptable medical source, the ALJ must offer germane reasons for doing so. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010).

The ALJ gave "great weight" to the opinions of the non-examining State agency consultants who work for Disability Determination Services (DDS). Based on his review of the record, Howard Platter, M.D., opined in September 2015 that Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for 6 hours in an 8 hour workday; sit for 6 hours in an 8 hour workday; and that reaching overhead with either arm was limited. (AR at pp. 101-102). Dr. Platter attributed the reaching limitation to cervical radiculopathy. (AR at p. 103). The findings of fact upon which Dr. Platter relied included the September 2015 x-ray of Plaintiff's lumbar spine showing "[t]ransitional anatomy [without] significant spondylosis" and an x-ray of his cervical spine showing "[minimal" spondylosis [with] no acute osseous injury appreciated." (AR at pp. 99 and 366-67). He also relied on the range of motion evaluation results noted by Jeremiah Crank, M.D., who treated the Plaintiff. (AR at pp. 99, 334-35).

In June 2015, Dr. Crank of Yakima Neighborhood Health Services (YNHS), completed a Washington State Department of Social and Health Services (DSHS) form in which he indicated that Plaintiff's diagnosis of neck/lower back radiculopathy was "severe" in that it rendered him unable to perform the following basic work

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

activities: sitting, standing, walking, lifting, carrying, handling, pushing, pulling, reaching, stooping and crouching. (AR at p. 284). He opined that Plaintiff was "severely limited" and therefore, unable to meet the demands of sedentary work, and that this limitation would last 12 months. (AR at p. 285). Dr. Crank indicated Plaintiff needed physical therapy, an x-ray/MRI of his cervical and lumbar spine, and possible referral to a neurosurgeon. (*Id.*). In addition to physical therapy as treatment, Dr. Crank indicated other possible forms of treatment included an injection of pain medication or surgical decompression surgery. (*Id.*).

The ALJ gave little weight to Dr. Crank's opinion on the basis that his treatment notes did not document such limitations and that he did not review any imaging prior to forming his opinion which "appear[ed] to be primarily based on the claimant's self-reports." (AR at p. 27). Furthermore, according to the ALJ, Dr. Crank, "despite alleging such drastic limitations," provided the Plaintiff with a physical therapy referral indicating he believed the Plaintiff could benefit from conservative treatment. (*Id.*).

It appears June 23, 2015, was the first time Plaintiff was seen by Dr. Crank. In his treatment note of that date, the doctor assessed Plaintiff as suffering from uncontrolled diabetes and cervical and lumbar radiculopathy. The doctor provided Plaintiff with a form to call for an appointment of physical therapy. Dr. Crank also requested prior imaging of Plaintiff's lower back. (AR at p. 327). What the ALJ failed to note, however, was that what Dr. Crank significantly based his opinion on was the range of motion (ROM) evaluation he performed on Plaintiff. The results of that evaluation revealed the Plaintiff was significantly limited regarding extension and flexion of his back; lateral (flexion) movement of his back; extension and flexion of his neck; lateral bending of his neck; rotation of his neck; backward extension of his hips; flexion of his hips; adduction of his hips; abduction of his hips; flexion of his knees; abduction and adduction of his shoulders; and extension and flexion of his

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

shoulders. (AR at pp. 334-35). In the DSHS form he completed, Dr. Crank specifically singled out the "ROM Sheet." (AR at p. 284). And in his treatment notes from June 23, 2015, Dr. Crank noted that his musculoskeletal examination of Plaintiff revealed that his back was tender to palpation (TTP) and that he had a positive bilateral straight leg raise test (SLT) indicating nerve root irritation in the back. (AR at p. 333).

Although the September 2015 x-rays of Plaintiff's cervical and lumbar spine seemingly did not reveal anything very significant, those imaging results and earlier imaging results were not wholly devoid of things to which Plaintiff's back pain could be attributed. Imaging results from 2010 showed sacralization of L5 on the left, early facet arthrosis of L3-4, and broad-based disc bulge with bilateral facet arthrosis on L4-5 producing mild bilateral neural foraminal narrowing and "moderate central canal stenosis with likely contact of the left L5 nerve root in the lateral recess." (AR at pp. 376-77).[1]

Dr. Crank continued to treat the Plaintiff after June 2015 and after the September 2015 imaging results had been received. On September 23, 2015, Dr. Crank noted that Plaintiff had symptoms of cervical/lumbar radiculopathy and a "trial of physical therapy" would start soon. (AR at p. 577). Dr. Crank again found that Plaintiff had a spine TTP and a positive bilateral SLT. (AR at p. 584). Dr. Crank offered the same assessment on October 28, 2015 (AR at pp. 569 and 575), January 29, 2016 (AR at pp. 561 and 568), February 19, 2016 (AR at pp. 553-54 and 560), and May 21, 2016 (AR at pp. 545 and 552).

In sum, the ALJ erred in concluding that Dr. Crank relied primarily based on Plaintiff's self-report. Furthermore, Dr. Crank did not merely provide a physical

---

[1] In 2010, based on these imaging results, Daniel Seltzer, M.D., opined that Plaintiff remained capable of performing medium level work. (AR at p. 382).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

therapy referral. He suggested other forms of treatment remained a possibility, including an injection of pain medication or surgical decompression surgery.

Eventually, Plaintiff started seeing Maryalice R. Hardison, and Advanced Registered Nurse Practitioner (ARNP), at YNHS. In March 2017, Hardison ordered a CT scan which she noted had to be processed through Plaintiff's insurance, although she also advised Plaintiff to try physical therapy "since we don't have any records for you regarding this." (AR at p. 521). She remarked that "[f]urther treatment depends on these results/actions." (*Id.*). Hardison completed a DSHS "Physical Functional Evaluation" form which included a "Range Of Joint Motion Evaluation Chart" indicating ROM limitations similar to those previously reported by Dr. Crank. (AR at pp. 604-06). Hardison, however, also opined, consistent with Dr. Crank's previous opinion, that Plaintiff was unable to perform one or more basic work-related activities such that it rendered him unable to meet the demands of even sedentary work. (AR at pp. 603-04). Like Dr. Crank, Hardison recommended physical therapy, pain medications, or possible surgery. (AR at p. 604). At the same time that she completed the DSHS evaluation, Hardison completed a form prepared by Plaintiff's attorney in which Hardison indicated Plaintiff would miss four or more days of work per month "due to pain and side effects of medication." (AR at p. 439). According to Hardison, Gabapentin, Methocarbamol and Tramadol can cause drowsiness. (AR at p. 438). Hardison indicated the Plaintiff rests all day due to pain. (*Id.*).

The ALJ gave little weight to the opinion of ARNP Hardison, finding her opinion not consistent with the objective findings in the medical records in that "[i]maging results show only minor pathology and there is no EMG [electromyography] or NCV [nerve conduction velocity] testing to support the [Plaintiff's] pain complaint." (AR at p. 27). The ALJ also stated the treatment notes showed Plaintiff was generally able to ambulate pretty well and that this was contrary

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 9**

to Hardison's opinion that Plaintiff needed to rest all day due to pain. (*Id*.).

The ALJ made no mention of Hardison's ROM findings. Furthermore, no medical professional (including Dr. Platter) stated that an EMG or NCV was necessary, or that Plaintiff's imaging results categorically precluded the ROM limitations found by Dr. Crank and ARNP Hardison, and the exertional limitations opined by them. Instead, the ALJ essentially offered his own medical assessment of the imaging results. This is improper. As a lay person, an ALJ is "simply not qualified to interpret raw medical data in functional terms." *Padilla v. Astrue*, 541 F.Supp. 2d 1102, 1106 (C.D. Cal. 2008), quoting *Nguyen v Chater*, 172 F.3d 31, 35 (1st Cir. 1999)(per curiam)

The ALJ did not provide specific and legitimate reasons for rejecting the opinion of Dr. Crank, nor did he provide germane reasons for rejecting the opinion of ARNP Hardison.

**TESTIMONY RE SYMPTOMS AND LIMITATIONS**

Where, as here, the Plaintiff has produced objective medical evidence of an underlying impairment that could reasonably give rise to some degree of the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ's reasons for rejecting the Plaintiff's testimony must be clear and convincing. *Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014)*; Garrison v. Colvin*, 759 F.3d 95, 1014 (9th Cir. 2014). If an ALJ finds a claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). Among other things, the ALJ may consider: 1) the claimant's reputation for truthfulness; 2) inconsistencies in the claimant's testimony or between his testimony and his conduct; 3) the claimant's daily living activities; 4) the claimant's work

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Id*.

The ALJ found that while Plaintiff complained of "drastic physical limitations due to back pain, the records show no significant treatment for this issue to include never following through with a physical therapy referral." (AR at p. 24). It is true there are repeated references to Plaintiff awaiting to commence physical therapy and in fact, Dr. Crank's May 2016 report refers to Plaintiff being on a waiting list. (AR at p. 545). There is no indication that Plaintiff had undergone any physical therapy pursuant to the referral by Dr. Crank at the time of the hearing in May 2017. The question is does the record allow for a reasonable inference that it was Plaintiff who failed to follow through on physical therapy as opposed to there not being an available spot for him. The record does not allow for such an inference, and certainly not a "clear and convincing" one, that it was the Plaintiff who failed to pursue therapy. Furthermore, Plaintiff did receive "significant treatment" for his back pain as evidenced by his numerous visits to YNHS and the pain medications prescribed for him, including Gabapentin, Methocarbamol and Tramadol.

The ALJ noted that while incarcerated, Plaintiff was able to work in the kitchen for two hours a day and that he worked with about 50 other people in a production line type setting. (AR at p. 23). The ALJ also noted that Plaintiff had not applied for any jobs since being released from prison. (*Id.*). Plaintiff's time in prison occurred before his alleged disability onset date of April 20, 2015. Furthermore, working two hours a day in a controlled prison environment is simply not comparable to the exertional and non-exertional demands of a full-time job in the outside world. Not applying for jobs following release from prison is not a "clear and convincing" reason for discounting Plaintiff's testimony about his symptoms and limitations.

The ALJ did not offer "clear and convincing" reasons for discrediting Plaintiff's testimony about his symptoms and limitations, particularly so when his

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

testimony is consistent with the limitations opined by his treating physician and treating ARNP.

**REMAND**

Social security cases are subject to the ordinary remand rule which is that when "the record before the agency does not support the agency action, . . . the agency has not considered all the relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Treichler v. Commissioner of Social Security Administration*, 775 F.3d 1090, 1099 (9th Cir. 2014), quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598 (1985).

In "rare circumstances," the court may reverse and remand for an immediate award of benefits instead of for additional proceedings. *Id.*, citing 42 U.S.C. §405(g). Three elements must be satisfied in order to justify such a remand. The first element is whether the "ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Id.* at 1100, quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). If the ALJ has so erred, the second element is whether there are "outstanding issues that must be resolved before a determination of disability can be made," and whether further administrative proceedings would be useful. *Id.* at 1101, quoting *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id.* Finally, if it is concluded that no outstanding issues remain and further proceedings would not be useful, the court may find the relevant testimony credible as a matter of law and then determine whether the record, taken as a whole, leaves "not the slightest uncertainty as to the outcome of [the] proceedings." *Id.*, quoting *NLRB v. Wyman-*

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

*Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969). Where all three elements are satisfied- ALJ has failed to provide legally sufficient reasons for rejecting evidence, there are no outstanding issues that must be resolved, and there is no question the claimant is disabled- the court has discretion to depart from the ordinary remand rule and remand for an immediate award of benefits. *Id*. But even when those "rare circumstances" exist, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Id*. at 1102, quoting *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989).

In this case, the ALJ did not provide legally sufficient reasons for rejecting the medical opinions of Dr. Crank and ARNP Hardison, and for discounting the Plaintiff's testimony. There are no outstanding issues which need to be resolved and therefore, further administrative proceedings would not be helpful. Dr. Crank and ARNP Hardison opined that Plaintiff is unable to meet the demands of even sedentary work. The VE acknowledged there are no jobs available for an individual who is unable to meet the exertional demands of sedentary work. (AR at p.77). ARNP Hardison opined the Plaintiff would miss four or more days of work per month due to back pain. The VE testified that an employer will tolerate approximately six unscheduled absences in a year and anymore than that would likely result in termination. (AR at pp. 77-78). There is no question the Plaintiff is physically disabled in that he cannot perform the exertional demands of even sedentary work.[2]

---

[2] As such, the court deems it unnecessary to address the contentions related to Plaintiff's mental RFC, including the ALJ's failure to consider the letter submitted by Plaintiff's sister. (AR at p. 282). Nor is it necessary to address Plaintiff's contention related to the availability of other jobs in the national

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 13**

Accordingly, the court exercises its discretion to remand this matter for an immediate award of Title XVI SSI benefits.

## CONCLUSION

Plaintiff's Motion For Summary Judgment (ECF No. 14) is **GRANTED** and Defendant's Motion For Summary Judgment (ECF No. 15) is **DENIED**. The Commissioner's decision is **REVERSED**.

Pursuant to sentence four of 42 U.S.C. §405(g), this matter is **REMANDED** for payment of Title XVI SSI benefits to the Plaintiff.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly, forward copies of the judgment and this order to counsel of record, and close this file.

**DATED** this  17th  day of July, 2019.

*s/Lonny R. Suko*
LONNY R. SUKO
Senior United States District Judge

---

economy considering his limited ability to reach overhead (a non-exertional limitation).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 14**